22-5011 U.S. v. Sago Mr. Pincus My name is Howard Pincus. I'm a Federal Public Defender and I represent Kyle Sago. As this court has made clear, the malice required for a murder is not satisfied by an intentional kill. It also requires an absence of excuse, justification, or mitigation. Well, those have to be raised as affirmative defenses. If those aren't raised, if you're not arguing that they were self-defense or duress or something like that, it doesn't have to be in the initial instruction, does it? No, because this is an element of murder. Malice is an element of murder, both first and second degree, and requires the absence of mitigation. And there was legally recognized mitigation here, as this court made clear in Toledo. But that issue about whether there's something in mitigation has to be raised by the defendant, does it not? The government then has to prove it beyond a reasonable doubt, the absence of that mitigation. There certainly has to be evidence of it, and self-defense was raised by the defense. Mr. Sago testified to self-defense. And as this court recognized in Toledo, when there's self-defense, when there's evidence of self-defense which is based on a reasonable belief of the need to use deadly force, there is almost inevitably evidence of imperfect self-defense which requires only an unreasonable belief to use deadly force. But the defendant raised the defense of self-defense, and that's why there was an instruction on that. Otherwise, if it hadn't been raised by the defendant, the court had no obligation to instruct on self-defense, did it? It did, because malice requires the absence of excuse, mitigation, or justification. So the jury has to be instructed you have to find beyond a reasonable doubt that there wasn't duress, there wasn't self-defense, there wasn't a variety of… If there's evidence of it. Here, Mr. Sago testified to acting in self-defense, so self-defense was a part of the case. And malice is an element of the crime. And if malice requires the absence of excuse, justification, or mitigation, where there's evidence of excuse, justification, or mitigation, the court has to instruct on that malice isn't satisfied just by an intentional killing. Sua sponte has the obligation, is that what you're saying? Because it wasn't requested. Right, because it's part of the element of malice.  And you're saying it's part of the element of malice based on the Sarawak decision? Yes, I'm not saying that this court, I think, said this in Sarawak. And it's repeated in other cases, like Oldham, and Barrett, and Curry, where this court said, we need to lay out, in order to determine whether it's possible misconduct, the elements of the requirements for murder. And it repeated what this court said in Sarawak, that an intentional killing alone is not enough. That if there is excuse, justification, or mitigation, there is not malice. And therefore, a conviction for murder doesn't lie. Why wasn't there invited error here? Didn't the defense agree to the jury instructions? Well, the prosecutor said, we conferred on jury instructions. The defense agreed that they had, agreed that the instructions were OK. But that was before Mr. Sago testified. That was before self-defense was injected into the case. But once self-defense was injected into the case, there was no agreement beyond that. Well, why didn't counsel, having agreed to the jury instructions, need to withdraw that agreement? I mean, as far as the court's concerned, everything is fine. Well, the court is the one who said, let's instruct on self-defense. And the court has before Toledo, which makes clear imperfect self-defense. And the court had some qualms about self-defense, said this is close. And I think the reason is because it was concerned about the reasonableness of the belief, which gets you right into imperfect self-defense. Well, I'm still not sure. I'm sure you've got a direct answer to this. But maybe just complete the sentence. There was no invited error because? There was no invited error because he didn't ask the court to do anything. He never said, once self-defense is in the case, the instructions are OK. There is plain error review only because nobody objected. He didn't object to the definition of malice being incorrect. So certainly we're on a plain error review, and we don't dispute that. But he didn't ask the court not to instruct on it. Any agreement as to the jury instructions was before his client testified. He may not even have known that Mr. Sage was going to testify. And in fact, if you look at the closing argument, it's clear that counsel was arguing, essentially, imperfect self-defense. He says, if you don't believe my client's actions were reasonable, that's a reason to find second-degree murder instead of first-degree murder. But that's just wrong legally. He missed the fact that malice is mitigated by imperfect self-defense, and that if there is an unreasonable belief of the need to use deadly force, it doesn't take the crime from first-degree murder to second-degree murder. It makes it not murder at all. So there was nothing strategic here. Counsel didn't do anything that induced the court, once self-defense was injected in the case, not to give a proper instruction on malice. Any agreement to the instructions was before self-defense became an element of the case, before Mr. Sage testified. So would the rule that you're looking for on this appeal be that once a self-defense instruction is given, a court must also give an imperfect self-defense instruction? Is that the rule? Yes, unless it might be different if the defense says, I don't want that. Well, no, I understand that. But would that have to be the holding here for you to prevail? It would have to be something close to that, because this court said it's when there is evidence of self-defense, there's almost inevitably evidence of imperfect self-defense. So I think if there is self-defense, then imperfect self-defense should be instructed on as negating malice. That doesn't mean there has to be an instruction on the lesser-included offense of involuntary manslaughter. So after this case, the next time the committee sits down to do the Tenth Circuit pattern jury instructions, they should add a paragraph to the self-defense instruction that says imperfect self-defense as well? In terms of self-defense instruction, the involuntary manslaughter instruction. Or it actually should be a malice instruction. Malice instruction should include what this court said in Sarah Walsh and once repeated consistently. Of course, it's not there now, right? In the pattern instruction, no. Yeah, how does that go to the plainness of the error? Is that a relevant factor? No, this court has said that the pattern instructions don't. Well, they're not required, but are they relevant to the plain error analysis? Have we ever said that? That they're relevant to it? Yes. I mean, this court has sometimes looked at the fact that it's in the pattern instruction and that there's law contrary to what the defendant claims. But I'm not aware where there's a pattern instruction and the law is contrary to the pattern instruction that this court has said, well, because there's a pattern instruction, it's a blame. No, no, no. I'm not saying. Yeah, no. Yes. I misspoke. So if there weren't Sarawak, if there weren't Curry, if there weren't other cases like that, which makes clear that malice, just as a common law requires the absence of excuse, justification, or mitigation, then perhaps if there is a pattern instruction that says that and there's no law to the contrary of the circuit, then it might not be blamed. But that's not the case. We have Sarawak. We have Curry. We have this court very clearly saying that what it said in Sarawak, malice specifically requires committing the wrongful act without justification, excuse, or mitigation. And then it said again, when we say that a murder must be committed with malice, we mean not just that it requires a particular intent, but more to the point that it must also be without legal justification, excuse, or mitigation. Counsel, have you looked at the jury instructions in those cases? The jury instructions in those cases do not include what you insist must be included. Well, Sarawak, for example, was a voluntary manslaughter case. But this court said in order to manslaughter. So what it said about first degree murder was dictum, right? No, not at all. Because it said we have to figure out where voluntary manslaughter fits in the hierarchy of homicide offenses. In order to do that, it says, therefore, we start with the elements of murder. So it found it necessary to answer what is with malice in order to determine voluntary manslaughter, which is a killing without malice. It was essential to, by the court's own reasoning, to its result. And then again, in Curry, this court said, in order to answer the prostitution misconduct claim, we have to set out what we have to set as substantive law. And it said, in a separate section, murder and manslaughter. It said, here's the requirements for murder and malice. So the instruction on first degree murder should state that it has to have been committed without legal justification, excuse, or mitigation when? Whenever there's any evidence of any possible legal excuse, mitigation, et cetera. Yes. Regardless of whether it's requested by the… Because it's not part of the defense. I had always thought, correct me on this, that self-defense was an affirmative defense that had to be raised by the defendant. Although if it is raised, and there's some evidence to support it, the government has to negate it beyond a reasonable doubt. That's correct. So what does it mean to say it's an affirmative defense if it's an element, the absence is an element of the offense? Because the affirmative defense means we have to present some evidence to raise the issue. Once we do, it bears on the absence of mistake, excuse me. You don't have to request it. You don't have to raise, that would include insanity, for example, or diminished responsibility. If there's any evidence of that, then you have to have this instruction, even if it's not requested by the defendant. That's just… The distinction I'm making wasn't necessary in Sarawak. Well, the fact that justification, et cetera, is an affirmative defense was not necessary to the analysis in Sarawak. There was no reason for them to consider the point that interests me here, whether the issue has to be raised by the defendant. That's the difference between an affirmative defense and the elements of defense. An affirmative defense has to be negated beyond a reasonable doubt. But you're saying, no, it has to be, you don't even have to raise the affirmative defense to require an instruction. Well, you have to raise it in the sense of putting on evidence about it. You don't have to say we're raising this. I mean, ordinarily, if someone's raising affirmative defense in civil and criminal matters, it has to be raised. You have to say we are requesting this instruction on an affirmative defense. Well, it's pretty clear when you're raising, I acted in self-defense, whether perfect or imperfect. You almost inevitably have to testify to that fact about what your belief is. Here, the defendant didn't even request self-defense. Did the defendant request a self-defense? Well, the court brought it up, so it's fine. Yeah. And the attorney for the defendant, didn't he say something to the jury about the issue really is whether it's first or second degree? He said that in the opening before Mr. Sager testified. He said it at the end, really, what this case is about. And I think that's because he was skeptical about getting them to believe that this was reasonable. But his argument was effectively, if you don't – what he said, actually, is if you think his belief was unreasonable, that mitigates – that takes this case from first degree murder to second degree murder. And that's wrong. What it does is it takes it to no murder. And if involuntary manslaughter was to be a part of the case, of course, the government could have requested it. The court could have been sui sponte, or Mr. Sager could have requested it. But that doesn't detract from the fact that this mitigation of mitigation is an element of the effect, an element of the analysis. If I understand your reply brief correctly, and I just want you to confirm this, you're not saying that there should have been a lesser included on involuntary. Is that correct? That's not part of your argument. That's correct. And if there – to get a lesser included, you would have to request it. And the parties may not have wanted to give the jury that middle option. But there's no reason here why, once self-defense is in the case, you wouldn't want to give the jury the option to quit. So we would ask the court to vacate Mr. Sager's murder conviction and the Willington 924-J conviction, and remand for a new trial. Thank you. We now move on to the United States. May it please the court. The rule that Mr. Sager urges this court to adopt would effectively collapse self-defense into imperfect self-defense. If a defendant's unreasonable belief that deadly force was necessary is sufficient to require acquittal of murder, then defendants would never have to prove that they reasonably believed that deadly force was necessary. And this principle is embodied in the Toledo case that Mr. Finkus cites, where the court said, we perceive the distinguishing factor between perfect and imperfect self-defense to be the reasonableness of the defendant's belief that deadly force was necessary to prevent death or great bodily harm. If that belief was reasonable, then he is entitled to a self-defense acquittal. But if that belief was criminally negligent, then he is guilty of involuntary manslaughter. Each case from Sarawak through Toledo that Mr. Finkus relies upon involves, with the exception of Crayethan, involves an assertion of error that the district court erred in failing to give a lesser-included offense instruction, either a lesser-included offense instruction on voluntary manslaughter based on evidence of heated passion, or a lesser-included offense instruction on involuntary manslaughter. And you agree that he's not arguing for that now, what he just said? Yeah, he's saying he doesn't need to, because imperfect self-defense is a complete defense to murder. That if imperfect self-defense were shown, if he showed an unreasonable belief that he needed to use deadly force, that he would be entitled to be acquitted, not that that would just reduce murder to the lesser-included offense of involuntary manslaughter. And if that rule were adopted by this court, it would effectively eviscerate actual self-defense, because then the unreasonable belief that deadly force was required would be sufficient to defeat a murder conviction in every case. And for that reason, that can't be the rule. Every case that the defense relies on suggests that if a defendant raises a defense of involuntary manslaughter or voluntary manslaughter of imperfect self-defense or repeated passion, absolutely they're entitled to that lesser-included offense instruction, and then they're entitled to an instruction on imperfect self-defense, and to the definition of malice that the defense requests. Here, of course, we're in a plain error posture. So, first, none of these cases suggest that the definition of malice that the defense suggests from Serovoff is required in any case, but particularly in a case where the defense has failed to request an involuntary manslaughter instruction. Say that again? You're saying Serovoff doesn't say what? Yeah, he's saying it's just required when there's some evidence of one of those justifications or whatever. Yes, and Serovoff doesn't suggest that, and as our brief observes, that... Well, what does it mean when it says malice includes... malice is negated by one of those excuses? That means when... Serovoff stands to the proposition, and I think Toledo confirms this, that if the defense puts into issue whether involuntary manslaughter is at issue, whether imperfect self-defense mitigates murder into involuntary manslaughter, then yes, malice requires the absence of justification, mitigation, or excuse. And in fact, the Heated Passion case, the Serovoff, for example, suggests that if there is evidence of heated passion to mitigate murder to involuntary manslaughter, then the defense is entitled to an instruction that explains that in this context, malice requires the absence of justification, excuse, or mitigation. And that's... you're saying Serovoff requires the instruction even if it's not requested, as long as it's put at issue because there's evidence to support it? No, that's precisely the opposite of my argument. You're saying that if you're going to argue that there's not malice because of one of these justifications, you have to request an instruction on that? Certainly that's... to the extent that Serovoff... that language in Serovoff isn't dicta, at the best, it holds that in a case where that instruction is requested, that definition of malice comes into play and should be given. But they... Serovoff... Have we ever held that? Do we... do you have any precedent from this circuit that says it has to be requested? No, but Serovoff doesn't even say that that definition is required. Well, counsel, I understand that the discussion of malice in Serovoff comes up in the context of voluntary manslaughter, but in the portion of the opinion where the court says the definition of malice, it just flat out says malice is not satisfied simply by killing with an intentional or reckless mental state. Instead, malice specifically requires committing the wrongful act without justification, excuse, or mitigation. I mean, that seems like an all-purpose definition of malice. Why doesn't that... why isn't that binding and haven't future panels relied on that language? As Mr. Pincus pointed out, the Curry, Oldman, could you speak to that? Primarily because it's dicta in Serovoff, and to the extent that it reads more broadly, all the cases in which it has been applied or discussed are cases where involuntary or voluntary manslaughter is at issue. In that context... Is that issue because it was raised by the defendant as a request for lesser included or as a permanent defense? Yes. Okay. With the exception of Curry, but that's a prosecutorial misconduct case that involves the same issue of whether it was proper to give an involuntary or sufficient to show involuntary manslaughter. And so... and again, the principle here is, was Serovoff enough to put the district court on notice here that that definition of malice was required, where no involuntary manslaughter or obstruction was requested, and where the concept of imperfect self-defense was not raised. Certainly, given that no 10th Circuit case has ever held that it was error to fail to include this definition of malice in the jury instructions, that error cannot be plain. And, in any event, given the evidence here, given the defendant's attempts to plead guilty to second-degree murder, his attorney's repeated insistence that really the issue for this jury was the difference between first-degree and second-degree murder, Mr. Serov cannot show that any error, if plain, affected his substantial rights. I want to take a moment just to clarify a couple of things that Mr. Pincus brought up in his reply brief. First, the waiver issue that Judge Malkinson brought up. I think Mr. Pincus is right at bottom. That because Mr. Serov's attorney agreed to that instruction before he seemed to have any idea that his defendant would take the stand and testify about self-defense, his initial concession or agreement acquiescence in the proposed jury instructions does not constitute a waiver after his client took the stand and argued for self-defense. And so I think that argument in Mr. Pincus' brief is well taken. This is not a waiver case. This is a plain error case. And then one thing, a factual oversight in our brief that Mr. Pincus identifies is that Mr. Serov testifies that the victim, Mr. Morgan, as he is walking out of the house and starting to approach the car, Mr. Morgan, the victim, throws down his phone. And I think we say that in our brief. However, it's only Mr. Serov's testimony that suggests that that occurred. And in fact, the testimony of Charlene Murphy, Mr. Morgan's girlfriend, was that he left the phone inside the house and that it was on the couch inside the house. And I think that's on page 90 and 97 of Volume 3 of the record. And she later testifies that after the shooting, she goes inside to get Mr. Morgan's phone to call his mother so he can hear her voice as she's dying. So there's contrary testimony that contradicts Mr. Serov's self-serving testimony that Mr. Morgan threw down the phone and approached his car in anger. Likewise, there's testimony in the record, the testimony of the neighbors, Tasha Sims and Jane Sims, that contradicts Mr. Sago's insistence that Mr. Morgan, after being shot three times in the chest, continued to come at him and continued to come at him and continued to come at him. Mr. and Mrs. Sims, neighbors down the street, testified based on their observation that after the first volume shots, Mr. Morgan turned and ran toward the house, away from Mr. Sago. Given all of that testimony, the jury certainly had evidence that allowed them to reject Mr. Sago's thought of the first time, for the first time during his testimony, self-defense argument that he shot Mr. Morgan three times in the back because he thought Mr. Morgan was still coming at him. So, for all those reasons, the record in this case, even if this court were to change the pattern of instruction and hold that Serov-Walton-Tornado require district courts to instruct juries in every case that imperfect self-defense, every self-defense case that they may acquit based on imperfect self-defense, even if that were the rule adopted by this court, the error in this case would not be plain and it certainly didn't affect Mr. Sago's substantial rights. If the panel has no further questions, I'll see you next time. Thank you. Thank you. Mr. Pincus, I'm going to give you one minute to address, and don't go one second over. I probably should maybe give you a minute, but to respond to the argument that your argument essentially means that you don't need established self-defense. Imperfect self-defense requires an acquittal. Do you agree? Imperfect self-defense does require an acquittal unless it gets most of the prosecutor requests involuntary manslaughter or the court on its own motion puts it in. Once imperfect self-defense is raised, it doesn't engage malice, but the prosecutor requests involuntary manslaughter, the court can on its own insert involuntary manslaughter, and so can the defendant. Thank you. No more? No more. Thank you, counsel. Case is submitted.